463 So.2d 628 (1984)
Mrs. Petrona MARTINEZ
v.
DIXIE BREWING COMPANY, INC., and Home Insurance Company.
No. CA-2249.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1984.
Rehearing Denied February 26, 1985.
Writ Denied April 19, 1985.
*629 William R. Seay, Jr., Metairie, for appellant.
J. Paul Demarest, New Orleans, for appellees.
Before GULOTTA, KLEES and ARMSTRONG, JJ.
GULOTTA, Judge.
In this worker's compensation suit, the defendant employer and its insurer appeal from a judgment awarding death benefits, penalties and attorney's fees to the surviving parents of an employee who died following a job-related fight with his co-worker. Because we conclude the trial judge erred in failing to find that the death was caused by the decedent's willful intention to injure his fellow worker, we reverse the judgment and disallow recovery pursuant to LSA-R.S. 23:1081(1)(a).[1]
Jose A. Castro died six days after being injured in a fight at the Dixie Brewery Company warehouse with a co-employee, Earl Jackson. The circumstances of their struggle are essentially undisputed.
Wilfred Duhon, a witness to the incident, testified that Castro "started horsing around" with Jackson by slapping him on the back of his head. According to this witness, Jackson dismounted his fork lift and punched Castro on the nose, knocking him to the ground and breaking his watch. After Duhon helped him off the floor and picked up his watch, Castro then grabbed a metal bar and swung it at Jackson, striking the back of the lift. Jackson then ran *630 away from Castro in the warehouse and Castro threw the bar at him. Jackson returned with a metal pipe approximately six feet long, and Castro grabbed a baseball bat. The two proceeded to swing at each other, and, according to Duhon, were not "joking" or "playing around" but "meant to hit each other". After using the pipe to deflect Castro's bat swings "like Robin Hood and Little John", Jackson struck Castro on his leg and head with the pipe before the combat ended.
A second eye witness, Brian Branniff, gave a similar account of the incident that started as a "friendly encounter or scuffle" of "slapfighting". According to Branniff, after Castro's watch was broken, Jackson left on his fork lift and did something else, while Castro mumbled, "I'm going to get that M.F." When Jackson returned, Castro grabbed a metal bar and struck the fork lift truck where Jackson was sitting with his back to him. Jackson then ran to another part of the warehouse and Castro "kind of chased him". Branniff testified that when Jackson came back armed with a pipe, Castro grabbed the baseball bat and was "not horsing around" as he attempted to hit Jackson.
In written "Reasons for Judgment", the trial court rejected the defendant's special defense of willful intent to injure as follows:
"[T]he Court concludes that after considering testimony and evidence, if Castro did indeed joust at Jackson with a baseball bat, it was an impulsive act, not with the premeditation or malice necessary to preclude recovery. The defendants' own witnesses testified that Jackson and Castro were friends who had `played around' before and who had been `slap fighting' together on the job....
In the instant case, testimony relating to the friendliness between Jackson and Castro, the `playing' and `slap fighting', etc., suggests that there was neither existent premeditation nor malice on the part of the claimant and that his actions were impulsive.
While the Court is aware of some jurisprudence which precluded recovery both claimant and co-employee armed themselves, it was not the `arming' which necessitated the preclusion, but the intention of the claimant to injure another which was important. (The `armings' being but a symptomatic manifestation of intent.) Here, no such intent existed."
Appealing, defendants contend that the trial judge manifestly erred in failing to conclude that the accident resulted from Castro's willful intent to injure Jackson. Plaintiff argues, on the other hand, that the trial judge's conclusions are supported by the evidence and, alternatively, that defendants have waived this affirmative defense by failing to plead the defense in their answers to the suit.
Before turning to the merits of defendants' contention, we reject plaintiff's evidentiary argument directed towards defendants' failure to plead affirmatively the defense of willful intent to injure. Although an affirmative defense must be specially pled, LSA-C.C.P. Art. 1154 provides that when an issue not raised by the pleadings is tried by express or implied consent of the parties, it shall be treated in all respects as if it had been raised by the pleadings.
In the instant case, although defendants did not, by answer, raise the special statutory defense of willful intent to injure, the factual witnesses, Wilfred Duhon and Brian Branniff, testified at length, without any objection by plaintiff, concerning a blow-by-blow description of the combat and both Castro and Jackson's states of mind, i.e., whether or not they were serious or joking in their struggle. Under these circumstances, we conclude that the pleadings have been enlarged by this evidence to include the special statutory defense. Edwards v. Edwards, 282 So.2d 858 (La.App. 1st Cir.1973), writ refused 284 So.2d 777 (La.1973); Sanders v. New Orleans Public Service, Inc., 422 So.2d 232 (La.App. 4th *631 Cir.1982).[2] Accordingly, we turn now to a consideration of the evidence relating to willful intent to injure.
In the landmark case of Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51 (1961), the Louisiana Supreme Court set forth a two-part test for determining the existence of this intent in the context of a fight between co-workers. According to Velotta, the relevant inquiry is whether the injured employee had some premeditation and malice coupled with a reasonable expectation of bringing about a real injury to himself or another. No willful intention to injure is shown where impulsive conduct, such as a push, shove or fist blow does not render the conduct of the employee sufficiently serious or grave, or where the retalitation that flows from the employee's misconduct cannot be reasonably expected. The Velotta opinion further noted that the employer has the burden of proving this special defense, which is strictly construed against the employer, before being sustained to deprive the employee of compensation.
In Velotta, an older man impulsively threw or swung a pair of pants at a younger co-worker in resentment for ridicule and name-calling. This impulsive act, according to the Velotta court, did not manifest a willful intention to injure so as to preclude the claimant's recovery for injuries sustained when the younger man retaliated by striking the claimant violently on the jaw with his fist.
However, several later cases applying the Velotta test, under different circumstances, have denied recovery to claimants injured in fights with co-workers. In Relish v. Hobbs, 188 So.2d 479 (La.App. 3rd Cir.1966), writ refused 249 La. 737, 190 So.2d 242 (1966), the claimant's conduct was held to show willful intent to injure when the claimant threw a hammer at his co-worker, threw him down, and choked him before being injured himself as they continued to fight with a shovel and wrench. Similarly in Augustine v. Washington Parish Police Jury, 383 So.2d 1271 (La.App. 1st Cir.1980), writ denied, 386 So.2d 1379 (La.1980) compensation benefits were denied to a claimant involved in a work-related fight where both employees were equally intent on inflicting serious bodily injury to each other and had armed themselves with a tree limb and a hammer, respectively, under circumstances that could not be considered impulsive. In Buchert v. Metropolitan Life Insurance Company, 219 So.2d 584 (La.App. 4th Cir.1969) and in St. Pierre v. Baifield Industries, Inc., 225 So.2d 96 (La.App. 2nd Cir.1969) recovery was also denied to claimants who manifested a willful intention to engage in fist fights by following or pursuing their co-workers during an argument.
Applying Velotta and its progeny to the instant case, we conclude that our learned brother in the trial court erred as a matter of law in failing to find that Castro had a willful intention to injure his co-employee in this fight.
The undisputed testimony establishes that after the initial horsing around or friendly slap-fighting, there was a hiatus or lull in the activity as Castro picked up his watch and Jackson left the area in his fork lift. Instead of "cooling off" during this time lapse, however, Castro expressed a desire "to get that M.F." and proceeded to carry out his threat by arming himself with an iron bar and hitting Jackson's forklift upon Jackson's return. Furthermore, as Jackson ran away, Castro threw the bar after him and chased him before the combat resumed with a metal pipe and a baseball bat.
In view of this evidence, we conclude the trial judge's inference that Castro lacked premeditation or malice under the Velotta *632 test is in error. The trial judge's emphasis on the initial friendly horseplay to negate willful intent is in conflict with undisputed testimony that the friendly fight changed into serious combat. Moreover, the lull in the action as Castro picked up his watch and Jackson left the area militates against the finding that Castro's later actions in seizing the metal bar, striking the fork lift, chasing Jackson and swinging the baseball bat were "impulsive". Rather, this evidence compels a conclusion that Castro formulated a malicious intent to injure Jackson. Under these circumstances, we conclude the defendants successfully carried their burden of proving that Castro's injury resulted from a willful intention to injure his co-worker in the fight. LSA-R.S. 23:1081(2); Velotta v. Liberty Mutual Insurance Company, supra.
In the instant case, there is no real dispute of the underlying facts of the fight and no significant conflict between the testimonies of the two factual witnesses. We reverse, therefore, not as a matter of credibility, but rather based on our conclusion that the trial court's inferences from the undisputed facts and his application of the law are in error. The trial judge erred in finding as a matter of law no intent to injure based on undisputed facts.
Accordingly, we hold that the evidence clearly established Castro's willful intent to inflict injury on his co-worker. Having so concluded, we are compelled to reverse the judgment of the trial court and to dismiss plaintiffs' claims for benefits. Consistent therewith, the judgment of the trial court is reversed and set aside, and plaintiffs' suit is dismissed. Costs to be paid by defendants.
REVERSED AND RENDERED.
NOTES
[1] LSA-R.S. 23:1081 provides in pertinent part:

(1) No compensation shall be allowed for an injury caused:
(a) by the injured employee's willful intention to injure himself or to injure another....
[2] Although on the second day of trial the judge denied defendant's request to file an amended answer pleading the defenses of willful intent to injure and intoxication, it is significant that Duhon testified on the first day of trial and that Branniff's testimony was subsequently given without objection by plaintiff. We conclude that the major thrust of plaintiffs' objection to the amended answer was directed at the defense of intoxication rather than willful intent to injure.